UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br>VICTORIA C. QUADE,<br><br>　　　　　Debtor.<br><br>ENTERTAINMENT EVENTS, INC.,<br><br>　　　　Creditor-Appellant,<br><br>　　v.<br><br>VICTORIA C. QUADE,<br><br>　　　　Debtor-Appellee. | Appeal from the U.S. Bankruptcy<br>Court for the Northern District of<br>Illinois, Chapter 7<br>Case No. 12-bk-26779<br><br>Judge Timothy A. Barnes presiding<br><br><br><br>Case No. 13-cv-00124<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Appellant Entertainment Events, Inc. ("EEI") appeals the Bankruptcy Court's October 12, 2012 Order, which avoided EEI's lien on certain Merrill Lynch retirement accounts held by Debtor/Appellee Victoria C. Quade, and the Bankruptcy Court's November 13, 2012 Order, which granted in part and denied in part EEI's Motion to Amend the judgment (together, "the Bankruptcy Orders"). For the reasons discussed below, the Bankruptcy Orders are affirmed.

### BACKGROUND

The relevant facts in this case are not disputed and have been largely stipulated to by the parties. Therefore, the full recitation of the facts, found at *In re Quade*, 482 B.R. 217, 222-224 (Bankr. N.D. Ill. 2012) (Barnes, J.), is herein incorporated by reference, and only a brief summary is necessary for context.

EEI possesses against Quade a judgment in the amount of $884,056.55, registered on September 29, 2011, with the Circuit Court of Cook County, Illinois. Pursuant to a non-wage

garnishment issued to Merrill Lynch, EEI learned that Merrill Lynch was holding funds belonging to Quade in the form of retirement accounts. Specifically, Quade's Merrill Lynch retirement accounts consisted of a Roth retirement account ("Roth IRA") and an individual retirement account ("IRA") and had a value of approximately $199,000.00. EEI subsequently filed a motion for turnover of those funds.

On June 21, 2012, the state court issued an order granting EEI's turnover motion, and, on June 25, 2012, the state court issued a supplement order requiring Merrill Lynch to liquidate the retirement accounts and turn the funds over directly to EEI (collectively, the "Turnover Order").[1] On June 25, 2012, Quade filed an emergency motion to stay enforcement in the state court and, after that was denied, filed an emergency stay motion with the state appellate court. On June 28, 2012, EEI served Merrill Lynch with a copy of the supplement order. *Id.* at 222-224.

On July 3, 2012, Quade filed a Chapter 7 bankruptcy petition with the federal Bankruptcy Court. Due to the filing of Quade's bankruptcy petition, the proceeds of the Merrill Lynch retirement accounts were not turned over to EEI and remained in Merrill Lynch's possession. Quade subsequently filed a motion, pursuant to Section 522(f) of the Bankruptcy Code, to avoid EEI's judicial lien on the Merrill Lynch retirement accounts, on the basis that those accounts were property of the bankruptcy estate and were exempt. *Id.* at 224.

On October 10, 2012, the Bankruptcy Court granted Quade's motion and also granted EEI's motion to stay relief as to the assets over which Quade did not claim an exemption. *Id.* at 237-238. EEI then filed a motion asking the Bankruptcy Court to amend its judgment that the Merrill Lynch accounts were not part of the bankruptcy estate. On November 13, 2012, the

---

[1] The state court also granted a second turnover motion filed by EEI pertaining to other funds.

Bankruptcy Court entered an order granting and denying in part EEI's Motion to Amend, leaving unaltered the exempt status of the Merrill Lynch accounts. *See In re Quade*, No. 12-bk-26779, 2013 WL 4033101, at *2 (Bankr. N.D. Ill. Aug. 8, 2013).

EEI has framed the issues presented on appeal as follows:

(1) Whether the turnover order entered in state court as to the Debtor's interest in certain Merrill Lynch accounts, which was thereafter served on Merrill Lynch, effectively terminated Debtor's legal interest in those accounts.

(1) Whether the Debtor had a legal or equitable interest in the Merrill Lynch accounts when her bankruptcy petition was filed such that the Debtor could avoid a judicial lien on the Merrill Lynch accounts.

(3) Whether the Bankruptcy Court erred in entering an order avoiding EEI's judicial lien on Debtor's Merrill Lynch accounts pursuant to section 522(f)(1) of the Bankruptcy Code.

## LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 8013 provides that, on appeal, the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings." The bankruptcy court's determinations of law are reviewed *de novo*, while its findings of fact are reviewed for clear error. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009).

## ANALYSIS

Under Section 541 of the Bankruptcy Code, the filing of a bankruptcy petition creates an estate that is comprised of virtually all the "legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541's reach is broad and includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). Once the bankruptcy estate is created, the debtor may claim, under Section 522 of the Bankruptcy Code,

3

certain property interests as exempt from the estate, including tax-exempt retirement funds. 11 U.S.C. § 522(b)(3)(c).

The key issue in this case is whether the state court's Turnover Order divested Quade of her property interests in her Merrill Lynch retirement accounts so that those accounts were not part of the bankruptcy estate when Quade filed for bankruptcy on July 3, 2012. The Bankruptcy Court held that the retirement accounts were part of Quade's bankruptcy estate because, as of the date of the bankruptcy filing, Merrill Lynch continued to hold custodianship of the accounts and had not turned over the proceeds of the accounts. *Quade*, 482 B.R. at 229. In so doing, the Bankruptcy Court relied on the case *In re Alanis*, No. 12 B 07465, 2012 WL 1565355 (Bankr. N.D. Ill. May 2, 2012), and reasoned that the Turnover Order, which had not been effectuated, was like a check that had not cleared. *Quade*, 482 B.R. at 228-29.[2]

As the Bankruptcy Court correctly noted, there are no Illinois statutes that address the effect of a turnover order on the ownership of property. EEI relies heavily on the Illinois appellate decision, *Busey Bank v. Salyards*, 711 N.E. 2d 10 (Ill. App. Ct. 1999), but that case is not dispositive on the issue. In *Busey Bank*, 711 N.E. 2d at 16, the Illinois appellate court affirmed a finding of contempt against a third party who had not complied with a turnover order. The *Busey Bank* court specifically declined to decide whether the turnover order transferred ownership in the assets, noting that issue should have been litigated in the bankruptcy proceeding. *Id.* at 14-15; *see also id.* at 17 (Myerscough, J., dissenting) ("The majority found that it was not necessary to decide the legal issue - whether the turnover order transferred

---

[2] The Court notes that the Westlaw electronic version of Judge Barnes's opinion refers several times to "judicial hens." This apparently is a conversion mistake, as Judge Barnes's original order, found at Dkt. No. 58 in Case No. 12-bk-26779, refers instead to "judicial liens."

4

ownership of the funds to Busey. I agree."). However, in language cited by EEI, the *Busey Bank* court, relying on federal bankruptcy cases, then opined that "when the turnover order was entered in this case, [the debtors] no longer had an interest in [the property]." *Id.* at 15. The Bankruptcy Court found that *Busey Bank* "does not constitute good law on this issue, as the precedent upon which it relies is neither on point nor based on Illinois law." *Quade*, 482 B.R. at 228. This Court agrees.

The Court also agrees that the reasoning in *Alanis*, 2012 WL 1565355, is applicable and persuasive in this case. In *Alanis*, the bankruptcy court addressed the issue regarding a state court turnover order relating to the debtor's bank accounts, where the debtor filed for bankruptcy shortly after the order and before the bank had complied with it. Relying on Supreme Court decisions in *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983), and *Barnhill v. Johnson*, 503 U.S. 393 (1992), the *Alanis* court reasoned that the state court order was like a check that does not transfer the property interest until the check is honored. 2012 WL 1565355, at *2-3. The *Alanis* court held that "until that order was served on the bank and the bank complied with the order, thus 'charging' the accounts, the funds in the accounts continued to belong to [the debtor] and became property of her bankruptcy estate upon the filing of her bankruptcy case." *Id.* at *3.

As in *Alanis*, here, there was no "charging" of Quade's Merrill Lynch retirement accounts pursuant to the Turnover Order so as to transfer Quade's property interest to EEI before she filed for bankruptcy. Therefore, at the time of her filing, Quade still had a property interest in those accounts, and those accounts became part of the bankruptcy estate under Section 541 and were eligible for exemption under Section 522(f)(1) of the Bankruptcy Code. The Bankruptcy Court properly avoided EEI's lien on those accounts, and its judgment is affirmed.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Orders are affirmed.

Date:   September 25, 2013

JOHN W. DARRAH
United States District Court Judge